1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SHENITA M. KING,

      Plaintiff,

  vs.

MICHAEL J. ASTRUE, Commissioner of Social
Security of the United States of America,

      Defendant.

_____/

No. C 09-05322 MEJ

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**ORDER GRANTING DEFENDANT'S
CROSS-MOTION FOR SUMMARY
JUDGMENT**

**I.  INTRODUCTION**

Plaintiff Shenita M. King ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the decision of the Commissioner of Social Security, Defendant Michael

J. Astrue ("Defendant"), denying her claim for supplemental security income.  Pending before the

Court are the parties' cross-motions for summary judgment.  (Dkt. ## 29, 32.)  Having read and

considered the parties' papers, the administrative record below, and the relevant legal authority, the

Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-

motion for summary judgment for the reasons set forth below.

**II.  BACKGROUND**

**A.     Education and Work Experience**

Plaintiff was born on November 22, 1960.  (Administrative Record ("AR") 139.)  She

completed high school and, upon graduation, began working as a data entry clerk.  (AR 78-79, 413.)

She was last employed as a home companion in 2001.  (AR 101, 178.)  Plaintiff is unmarried and

lives with her mother in Pacifica.  (AR 118.)

United States District Court
For the Northern District of California

**B.    Medical History**

Plaintiff alleges disability from various impairments, including left eye blindness, depression, memory loss, and hypertension.  (AR 147, 159.)  Plaintiff has also identified right eye vision problems and anemia as causes of her disability.  (AR 92, 102.)  Although Plaintiff's left eye blindness resulted from an injury she suffered in the ninth grade, the earliest treatment in the record is from San Francisco General Hospital, dated October 11, 2001.  (AR 87-8, 241.)  On that date, an outside consultant examined Plaintiff for pain and decreased vision in her left eye.  (AR 241.)  She was diagnosed with glaucoma and prescribed medication.  (AR 241.)

On May, 21, 2003, Lillie A. Mosaddegh, M.D., completed an ophthalmological examination.  (AR 249.)  She diagnosed Plaintiff with "advance [sic] glaucoma," "large iris pigmentation," no light perception in the left eye, and 20/20 corrected vision in the right eye.  (AR 249.)

On June 23, 2003, Herbert N. Mitchell, M.D., and Disability Determination Services ("DDS") physician, completed a Physical Residual Functional Capacity ("RFC") Assessment.  (AR 251-60.)  He concluded that Plaintiff had no exertional, postural, manipulative, or communicative limitations, but had visual and environmental limitations in the workplace.  (AR 252-55.)  More specifically, he found that Plaintiff had limited depth perception and needed to avoid concentrated exposure to hazards such as machinery and heights.  (AR 254-255.)

On February 3, 2004, Dr.  Mosaddegh completed another ophthalmological examination.  (AR 261-63.)  She diagnosed Plaintiff with "advance [sic] glaucoma" and light perception in the left eye, and "pigmentation endothelium" and 20/20 corrected vision in the right eye.  (AR 261.)

On February 17, 2004, H.K. Haveliwala, M.D., and DDS physician, completed a Physical RFC Assessment.  (AR 264-73.)  He concluded that Plaintiff had no exertional, manipulative, or communicative limitations, but had postural, visual, and environmental limitations in the workplace.  (AR 265-68.)  More specifically, he found that Plaintiff should never climb ladders or scaffolds, had limited depth perception and field of vision, and needed to avoid even moderate exposure to hazards such as machinery and heights.  (AR 266-68.)

Plaintiff was incarcerated from April 2004 to August 2004.  (AR 274-326.)  Her records from

1   California Women's Correctional Center indicate that Plaintiff complained of blurred vision.  (AR

2   275-320.)  Plaintiff also claimed she was anemic and requested iron supplement pills.  (AR 310,

3   320.)  Plaintiff received treatment and was prescribed medication.  (AR 275-320.)

4          On September 16, 2004, Frank Tortorice, M.D., treated Plaintiff for blurred vision.  (AR

5   387.)  On October 5, 2004, Dr. Tortorice treated Plaintiff for blurred vision and anemia.  (AR 387.)

6   On October 14, 2004, he treated Plaintiff for anemia and referred her to a dietitian.  (AR 385.)

7          On October 22, 2004, Lisa McCormick, R.D., counseled Plaintiff on nutrition and dieting.

8   (AR 386.)  Plaintiff told Ms. McCormick that she had been prescribed iron pills for anemia, but had

9   not "begun taking them." (AR 386.)  Ms. McCormick gave Plaintiff a dietary plan and requested

10  follow-up visits.  (AR 386.)  Plaintiff had follow-up visits on October 29, 2004 and November 11,

11  2004.  (AR 386.)

12         On October 28, 2004, Susan M. Longar, M.D., examined Plaintiff.  (AR 328-29.)  She

13  diagnosed Plaintiff with absolute glaucoma and no light perception in the left eye, and 20/20

14  corrected vision in the right eye.  (AR 328.)

15         On November 17, 2004, Jonathan Gonick-Hallows, Ph.D., conducted a psychological

16  evaluation of Plaintiff.  (AR 330-33.)  He did not have any medical records available for review

17  before Plaintiff's evaluation.  (AR 330.)  Plaintiff told Dr. Gonick-Hallows that she lived with her

18  family and felt "supported by" them.  (AR 331, 333.)  Plaintiff had a boyfriend who she saw

19  "frequently." (AR 331.)  However, she "was worrying a great deal about the future." (AR 331,

20  333.)  Plaintiff complained of several medical complications, including anemia and depression.  (AR

21  330.)  During testing, Dr. Gonick-Hallows found that Plaintiff "was able to learn simple new tasks,

22  and some kinds of tasks as they became mildly to moderately complex." (AR 333.)  But "she

23  appeared to become flustered and upset while working on complex visual tasks." (AR 333.)

24  Furthermore, Plaintiff "looked exhausted, and appeared to become somewhat more depressed over

25  the course of the testing." (AR 333.)  Dr. Gonick-Hallows noted that he could not determine the

26  reason for this because it "may be that multiple factors are involved in her deteriorated performance,

27  including fatigue, preoccupation, anxiety, and depressive symptoms." (AR 332.)  Although he noted

28         Page 3 of  29

that it "might be helpful to retest [Plaintiff] when and if her overall condition improves," he found that "[c]urrent test results would appear to be a reasonably good estimate of her typical daily ability." (AR 332.) Dr. Gonick-Hallows diagnosed Plaintiff with: "mixed depressive/anxiety disorder with post-traumatic stress features, dysthmia, and generalized anxiety features"; "polysubstance dependence in remission by subjective report"; "self-defeating personality"; and "stress related to failing eyesight and other health problems." (AR 333.) He assigned Plaintiff a Global Assessment Functioning ("GAF") score of 63. (AR 333.)

On November 29, 2004, Farah M. Rana, M.D., completed an internal medicine evaluation of Plaintiff. (AR 334.) She did not have any medical records for review. (AR 334.) Plaintiff told Dr. Rana that she suffered from loss of vision in the left eye, hypertension, and mental problems. (AR 334.) However, Plaintiff denied "any vision problems with her right eye." (AR 334.) She also told Dr. Rana that she "feels depressed all the time," "has a hard time focusing on things," and that she has "memory difficulties." (AR 334.) Upon a physical examination, Dr. Rana found that Plaintiff's left pupil "was very sluggish in response to light," and that she "was unable to count fingers or see light with her left eye." (AR 335.) Upon a neurological examination, Dr. Rana found that Plaintiff was "somewhat slow in her responses and she made one mistake on serial sevens," but she "was able to do simple math." (AR 335.) Although Dr. Rana found that Plaintiff had "subjective memory problems," she concluded that "[h]er memory problems most probably are secondary to her history of depression." (AR 336.) As for Plaintiff's functional capacity, Dr. Rana found that: she can stand, walk, and sit for "six hours with breaks" in an eight-hour day; she can "carry 25 pounds frequently and 50 pounds occasionally"; she "can use push and pull devices up to 50 pounds"; she is "blind in her left eye and this would interfere with her ability to drive and use computers and read"; and that she "can take public transportation." (AR 336.)

On November 30, 2004, Dr. Nguyen treated Plaintiff for irritation, itching, and swelling in both eyes. (AR 428.) She diagnosed Plaintiff with absolute glaucoma in her left eye. (AR 428.)

On December 8, 2004, Howard Hansell, M.D. and DDS physician, completed a Psychiatric Review Technique Form. (AR 337-50.) Upon reviewing all of the medical evidence, Dr. Hansell

concluded that Plaintiff had "medically determinable impairments" present, including dysthymia depression. (AR 340.) However, her impairments did not "precisely satisfy the diagnostic criteria" to meet any Listing of Impairments ("Listing"). (AR 340-50.) Dr. Hansell concluded that Plaintiff had moderate limitations in her activities of daily living; moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace; and had one or two episodes of decompensation, each of extended duration. (AR 347.)

On that same date, Dr. Hansell also completed a Mental RFC Assessment. (AR 351-54.) In assessing Plaintiff's understanding and memory, he found that she was not significantly limited in her ability to remember locations and work-like procedures or understand and remember very short and simple instructions, but she was moderately limited in her ability to understand and remember detailed instructions. (AR 351.) In assessing Plaintiff's sustained concentration and persistence, he found that she was not significantly limited in her ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, or make simple work-related decisions. (AR 351.) However, he found that she was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 351-52.) In assessing Plaintiff's social interaction, Dr. Hansell found that she was not significantly limited in her ability to ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, or maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (AR 352.) However, he found that she was moderately limited in her ability to interact appropriately with the general public. (AR 352.) In assessing her ability to adapt to changes, he found that she was not significantly limited in her ability to respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate

United States District Court
For the Northern District of California

1  precautions, or travel in unfamiliar places or use public transportation.  (AR 352.)  However, he

2  found that she was moderately limited in her ability to set realistic goals or make plans

3  independently of others.  (AR 352.)

4          On December 14, 2004, Dr. Nguyen treated Plaintiff for headaches.  (AR 428.)  She

5  diagnosed Plaintiff with absolute glaucoma and  no light perception in the left eye, and 20/25 vision

6  in the right eye.  (AR 428.)

7          On February 17, 2005, Dr. Tortorice treated plaintiff for high blood pressure, back pain, and

8  anemia.  (AR 378.)  She was prescribed medication.  (AR 378.)

9          On March 18, 2005, Fredric A. Chavez, L.C.S.W., completed a Short-Form Evaluation for

10  Mental Disorders.  (AR 396-98.)  At that time, Mr. Chavez had had four therapy sessions with

11  Plaintiff.  (AR 398.)  He diagnosed Plaintiff with major depressive disorder, "single episode

12  moderate."  (AR 396.)  Mr. Chavez noted that Plaintiff was well-groomed, had normal motor

13  activity, and was cooperative but had slow speech and was irritable.  (AR 396.)  He also noted that

14  Plaintiff was oriented with regards to person, place, time, and situation, and had normal memory, but

15  her concentration was slightly distracted.  (AR 396.)  Additionally, he noted that Plaintiff's

16  "depression caused her to obsess over issues of her health and responsibility to her family," and that

17  her judgment was mildly impaired.  (AR 397.)  Mr. Chavez concluded that Plaintiff's ability to

18  understand, remember, and carry out simple instructions was good.  (AR 398.)  He also concluded

19  that her ability to understand, remember, and carry out complex instructions, maintain concentration,

20  attention and persistence, and perform activities within a schedule and maintain regular attendance

21  was fair.  (AR 398.)  Further, he concluded that her ability to complete a normal workday and

22  workweek without interruptions from psychologically-based symptoms and respond appropriately to

23  changes in a work setting were poor.  (AR 398.)

24          On March 30, 2005, Dennis L. Hamby, M.D., examined Plaintiff for complaints of gas.  (AR

25  464.)  Dr. Hamby's impressions from the examination were extreme gaseousness of uncertain

26  etiology, with a patient who seems moderately nervous and has had dietary change, GE reflux

27  symptoms, anemia, and family history of colon cancer.  (AR 465.)  He recommended further

28

**United States District Court**
For the Northern District of California

1    examinations, including a colonoscopy for anemia, and strict dietary restrictions.  (AR 465.)

2         On April 14, 2005, John Chokatos, M.D., and DDS physician, completed a Physical RFC

3    Assessment.  (AR 399-411.)  He concluded that Plaintiff had no postural, manipulative,

4    communicative, or environmental limitations, but that she had exertional and visual limitations.

5    (400-03.)  More specifically, he found that Plaintiff could occasionally lift 50 pounds, frequently lift

6    25 pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an

7    eight-hour workday, did not have any limitations as to pushing or pulling objects, and that her near

8    acuity, far acuity, depth perception, accommodation, color vision, and field of vision were all limited

9    because she did not have light perception in the left eye.  (AR 400, 402.)

10        On April 19, 2005, Dr. Tortorice treated Plaintiff for fatigue and anemia.  (AR 459.)  She

11   was prescribed medication.  (AR 459.)

12        On May 19, 2005, Dr. Nguyen treated Plaintiff for pain and blurred vision in the right eye

13   and "crustiness" in the left eye.  (AR 427.)  She diagnosed Plaintiff with no light perception in the

14   left eye and 20/25 vision in the right eye.  (AR 427.)  On July 27, 2005, Dr. Nguyen treated Plaintiff

15   for irritation and "itchiness" in both eyes.  (AR 427.)  She diagnosed Plaintiff with glaucoma, no

16   light perception in the left eye, and 20/20 vision in the right eye.  (AR 427.)  On August, 24, 2005,

17   Dr. Nguyen treated Plaintiff for irritation in both eyes.  (AR 426.)  She diagnosed Plaintiff with

18   glaucoma, no light perception in the left eye, and 20/25 vision in the right eye.  (AR 426.)

19        On June 17, 2005, Dr. Tortorice completed a Mental Capacities form for CalWORKS.  (AR

20   438-39.)  He noted that Plaintiff has subjective memory problems, that directions should be properly

21   reiterated, and that she has a hard time focusing on things.  (AR 438.)  He also noted that, although

22   Plaintiff has a history of depression, she can still interact well with other people.  (AR 438.)  Dr.

23   Tortorice found that Plaintiff's blindness in the left eye would "interfere with her ability to drive and

24   use computers and reading [sic]."  (AR 439.)

25        On June 21, 2005, Dr. Tortorice completed a General Assistance Medical Report  (AR 440.)

26   He listed Plaintiff's diagnoses as depression, impaired vision, and memory loss.  (AR 440.)  He

27   found that Plaintiff was "unemployable," but that the probable duration of incapacity was temporary,

28

lasting only to June 26, 2006. (AR 440.) He further found that Plaintiff's only work limitations were lifting, pushing, or pulling over 50 pounds, and doing overhead work. (AR 440.)

On October 19, 2005, Ubaldo Sanchez, M.D., conducted a psychological evaluation of Plaintiff at the request of the Department of Human Services. (412-17.) He had limited records to review. (AR 413.) Plaintiff told Dr. Sanchez that she was blind in the left eye, had blurred vision in the right eye and, that she had back pain, depression, and anemia. (AR 413.) Plaintiff also told him that she was living with her family and had "been taking care of [her grandson] since he was born in February." (AR 413.) She would tend to the baby "all day" and would feed, change, and bathe him. (AR 413.) She would also cook and, at times, clean and do the laundry. (AR 413.) Dr. Sanchez diagnosed Plaintiff with depressive disorder, learning disorder, blindness in the left eye, blurred vision in the right eye, and psycho-social stressors relating to her unemployment and family. (AR 416.) He assigned her a GAF of 50. (AR 416.) He found that Plaintiff appeared as a "credible claimant." (AR 417.) From the tests, Dr. Sanchez concluded that Plaintiff was "not limited in her daily activities" and "would not have any difficulties being socially appropriate, but may have a slight decrease in memory" and "would have difficulties concentrating, focusing, and keeping up with the pace of a fast working environment given her current level of depression, which may cause difficulties concentrating and focusing on tasks." (AR 417.) However, he also concluded that Plaintiff "is currently viewed as being able to perform simple tasks" and that, given his "one-time evaluation of her, [he] is unable to determine if she is able to tolerate the stress of an 8-hour day, 40-hour workweek on a consistent basis." (AR 417.)

On May 16, 2006, Dr. Nguyen gave Plaintiff a sample of her eye medication and informed Plaintiff that she would need to make an appointment to obtain further samples. (AR 426.)

On May 18, 2006, Ronald Johnson, M.D., conducted a psychiatric examination of Plaintiff. (471- 75.) Plaintiff told him that she "takes iron pills for anemia, and other medications for high blood pressure." (AR 472.) Dr. Johnson noted that a typical day for Plaintiff "is difficult to clarify" because there "is no ongoing social life or close personal relationships, and she describes apparent avoidance of people even within her own household." (AR 473.) Plaintiff "could not name any

United States District Court
For the Northern District of California

hobbies or recreational activities, and how she passes the day from hour to hour is not fully clear." (AR 473.)  Dr. Johnson further noted that she "is capable of her daily self-care in terms of basic personal hygiene." (AR 473.)  Dr. Johnson also noted that Plaintiff "is clinically depressed to a moderate degree" and there "is mild psychomotor retardation with associated slowness in movement, thinking and speech." (AR 473.)  Plaintiff completed simple numerical tasks "slowly and inefficiently" but "she was able to do one-step tasks." (AR 474.)  Although Plaintiff was "cooperative in this examination," "[h]er judgment in interpersonal matters is poor in terms of maintaining adaptive gratifying relationships." (AR 474.)  Dr. Johnson diagnosed Plaintiff with dysthymic disorder (moderate to mark), features of underlying post-traumatic stress disorder due to her eye injury and left eye blindness, underlying personality disorder, and life circumstance problem. (AR 474.)  He concluded that Plaintiff's "[p]rognosis is generally poor for any significant change in her overall functioning level in the immediate future," and "her depression appears chronic due to the multiple identifiable circumstances in her life." (AR 475.)  Based on the examination, Dr. Johnson concluded that Plaintiff would have "marked difficulty focusing and concentrating on sustained, productive, timely work tasks in the normal course of a full 8-hour workday or full 40-hour work week," "marked difficulty communicating effectively on a sustained basis with others, including the general public, co-workers, and supervisors," and "marked difficulty maintaining regular predictable attendance in locations." (AR  475.)

On February 23, 2009, David J. Anderson, M.D., completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (AR 476- 78.)  He found that Plaintiff's ability to understand, remember and carry out simple instructions, and make judgments on simple work-related decisions was not impaired. (AR 476.)  He also found that Plaintiff's ability to understand, remember and carry out complex instructions was mildly impaired, and that her ability to make judgments on complex work-related decisions was moderately impaired. (AR 476.)  Furthermore, Dr. Anderson found that Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers was mildly impaired, and that her ability to respond appropriately to usual work situations and to changes in a routine work setting was moderately impaired. (AR 477.)

1    On that same date, Dr. Anderson also completed a Medical Interrogatory regarding Plaintiff's

2    mental impairments.  (AR 479-83.)  He specified Plaintiff's impairments as functional blindness in

3    the left eye with glaucoma, low back pain with objective findings of degenerative disc or joint

4    disease, depression, dysthymic disorder, personality disorder, and substance abuse disorder.  (AR

5    479.)  Dr. Anderson found that Plaintiff's activities of daily living were mildly restricted, she has

6    moderate difficulties in maintaining social functioning and concentration, persistence or pace, and

7    she has continuous repeated episodes of decompensation, each of extended deterioration.  (AR 480.)

8    He concluded that Plaintiff's impairments did not meet or equal a Listing.  (AR 481.)  He also

9    concluded that Plaintiff "could do simple repetitive work with occasional social contract" in a work

10   setting on a sustained basis despite her mental impairments.  (AR 483.)

11   On May 19, 2009, Ahmed El-Sokkary, Psy.D., conducted a psychological evaluation of

12   Plaintiff.  (AR 484-86.)  Plaintiff complained of blindness in the left eye, depression, and back pain.

13   (AR 484.)  She told Dr. El-Sokkary that she "currently lives with her mother and spends most of her

14   time alone."  (AR 484.)  She also told him that she "is able to care for her hygiene, grooming, daily

15   living activities, and her mother takes care of all of the cooking and cleaning."  (AR 484.)  Dr. El-

16   Sokkary diagnosed Plaintiff with depressive disorder, not otherwise specified.  (AR 486.)  He found

17   that Plaintiff "demonstrates a capacity to understand, remember, and perform simple tasks" and

18   "maintain a sufficient level of concentration, persistence, and pace to do basic work in an

19   environment that health condition would allow [sic]."  (AR 486.)  He also found that Plaintiff

20   "would be able to appropriately interact with supervisors and co-workers at this time."  (AR 486.)

21   **C.    Procedural Background**

22   On September 24, 2004, Plaintiff filed an application for supplement security income,

23   alleging disability beginning on November 10, 1997.  (AR 40, 140.)  Plaintiff was 43 years old at the

24   time she filed her application.  (AR 140.)  The Social Security Administration ("SSA") denied her

25   application initially on January, 20, 2005, (AR 40, 154-58), and upon reconsideration on April 20,

26   2005.  (AR 40, 146-51.)  Plaintiff filed a timely request for a hearing before an administrative law

27   judge ("ALJ") on June 20, 2005.  (AR 40.)

28

Page 10 of  29

1       On November 20, 2006, ALJ Benjamin F. Parks held a hearing.  (AR 58-63.)  Plaintiff,

2   represented by her attorney, Angelina Valle, failed to appear at the hearing.  (AR 54-55.)  Upon

3   showing good cause, ALJ Parks granted Plaintiff a rescheduled hearing on May 3, 2007.  (AR 49-

4   53.)  Plaintiff appeared at the hearing with her attorney, Ms. Valle.  (AR 40.)   Joel M. Greenberg

5   testified as an impartial vocational expert ("VE").  (AR 40.)  On June 6, 2007, ALJ Parks concluded

6   that Plaintiff was not disabled under the Social Security Act.  (AR 37-48.)  On July 5, 2007, Plaintiff

7   filed an appeal with the Appeals Council, which subsequently remanded the case back to the ALJ for

8   further proceedings.  (AR 29-33, 34-36.)

9       On July 21, 2008, Ms. Valle withdrew as Plaintiff's attorney of record.  (AR 28.)  On

10   November 18, 2008, ALJ Parks held a second hearing.  (AR 27.)  Plaintiff, unrepresented, failed to

11   appear at the hearing.  (AR 27.)  Upon showing good cause, ALJ Parks granted Plaintiff a

12   rescheduled hearing on April 24, 2009.  (AR 11-28.)  Plaintiff appeared at the hearing

13   unrepresented.  (AR 14.)  Robert A. Raschke testified as an impartial VE.  (AR 14.)   On August 8,

14   2009, ALJ Parks concluded that Plaintiff was not disabled under the Social Security Act.  (AR 11-

15   24.)  ALJ Parks's decision became the final decision of the Commissioner when the Appeals

16   Council declined to review it on September 10, 2009.  (AR 6-8.)

17   **D.       The ALJ's Findings**

18       The regulations promulgated by the Commissioner of Social Security provide for a five-step

19   sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R. §

20   404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The sequential inquiry is terminated

21   when "a question is answered affirmatively or negatively in such a way that a decision can be made

22   that a claimant is or is not disabled."  *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).

23       The ALJ must first determine whether the claimant is performing "substantial gainful

24   activity," which would mandate that the claimant be found not disabled regardless of medical

25   condition, age, education, and work experience.  20 C.F.R. § 404.1520(b).  Here, ALJ Parks

26   determined that Plaintiff had performed substantial gainful activity since her alleged onset date,

27   November 10, 1997.  (AR 16.)  ALJ Parks found that "for 8 months in 2003," Plaintiff worked "as an

28

1    in home care provider earning $11, 393." (AR 16.)

2        At step two, the ALJ must determine, based on medical findings, whether the claimant has a

3    "severe" impairment or combination of impairments as defined by the Social Security Act.  At step

4    two, "severe" means any impairment or combination of impairments that significantly limits the

5    claimant's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c),

6    416.920(c).  This is a de minimis inquiry designed to weed out nonmeritorious claims at an early

7    stage in the analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 148, 153-4 (1987).  "[O]nly those claimants

8    with slight abnormalities that do not significantly limit any basic work activity can be denied

9    benefits" at step two of the analysis.  *Id*. at 158.  If no severe impairment is found, the claimant is not

10   disabled.  20 C.F.R. § 404.1520(c).  Here, ALJ Parks determined that the evidence established that

11   Plaintiff suffered from severe "left eye blindness, hypertension, depression, [and] substance abuse, in

12   remission." (AR 16.)

13       If the ALJ determines that the claimant has a severe impairment, the process proceeds to the

14   third step, where the ALJ must determine whether the claimant has an impairment or combination of

15   impairments which meets or equals an impairment in the Listings.  20 C.F.R. § 404.1520(d); 20

16   C.F.R. Pt. 404, Subpt. P, App. 1.  If a claimant's impairment either meets the listed criteria for the

17   diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to

18   be disabled.  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).  Here, ALJ Parks determined

19   that Plaintiff did not have any "impairment or combination of impairments that meets or medically

20   equals one of the listed impairments." (AR 16.)

21       The fourth step of the evaluation process requires that the ALJ determine whether the

22   claimant's RFC is sufficient for him to perform past relevant work.  20 C.F.R. § 404.1520(e).  RFC

23   refers to what an individual can do in a work setting, despite limitations caused by medically

24   determinable impairments.  20 C.F.R. § 416.945(a).  In assessing an individual's RFC, the ALJ must

25   consider his or her symptoms (such as pain), signs, and laboratory findings together with other

26   evidence we obtain.  20 C.F.R. § 404, Subpt. P, App. 2 § 200.00(c).  Here, ALJ Parks determined

27   that Plaintiff has the RFC to:

28

**United States District Court**
For the Northern District of California

> [P]erform medium work as defined in 20 CFR 416.967(c) except that she has a need to avoid hazardous machinery; has limited peripheral vision; moderate restrictions in social functioning; mild restrictions in concentration, persistence and pace. The latter results in a 40-50% decrease in the ability to perform detailed and complex tasks and a 10% decrease in the ability to perform simple and repetitive tasks. There have been no extended episodes of decompensation. Requires limited public contact.

(AR 18.)

In the fifth step of the analysis, the burden shifts to the ALJ to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the medically determinable impairments and symptoms, functional limitations, age, education, work experience and skills. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). Here, ALJ Parks determined that Plaintiff is not capable of performing her past relevant work as a home attendant. (AR 23.) However, he opined that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," which include employment as a "small product assembler" and a "cleaner polisher." (AR 23.) As such, ALJ Parks determined that Plaintiff is not disabled. (AR 23.)

## III. LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence" means more than a scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court must consider the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved

Page 13 of 29

United States District Court
For the Northern District of California

by the ALJ. *Id.* Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (citation omitted).

## IV. ISSUES

Plaintiff seeks reversal of ALJ Parks's denial of supplemental security income, arguing that:

(1)    The ALJ improperly evaluated Plaintiff's mental RFC and rejected the opinions of all doctors who assessed Plaintiff's limitations in the area of concentration, pace, and persistence;

(2)    The ALJ improperly accepted the VE's testimony without explaining the basis of his qualifications as an expert;

(3)    The ALJ failed to include all of Plaintiff's limitations in the hypothetical posed to the VE as required by law;

(4)    The ALJ improperly accepted the VE's testimony regarding Plaintiff's ability to perform the job of small products assembler, despite an apparent conflict with the Dictionary of Occupational Titles ("DOT"); and

(5)    The ALJ improperly accepted the VE's testimony regarding the number of regional cleaner and polisher jobs without clarifying whether they were part-time or full-time jobs.

## V. DISCUSSION

**A.     Whether ALJ Parks Properly Evaluated Plaintiff's Mental RFC.**

Plaintiff first argues that the ALJ failed to properly evaluate her mental RFC. Specifically, Plaintiff argues that the ALJ's findings are not supported by substantial evidence because they conflict with the opinions of all doctors who assessed her as moderately or markedly limited in the areas of concentration, persistence, and pace. In support of her argument, Plaintiff provides the following chart summarizing the opinions of everyone who saw or reviewed her files:

| Source of Opinion | Activities of Daily Living | Social Functioning | Concentration, Persistence, and Pace | AR |
|---|---|---|---|---|
| | | | | |

| ALJ's Hypo 1 | Mild | Moderate | Mild | 124 |
|---|---|---|---|---|
| Dr. Gonick-Hallows | Not assessed | Not assessed | Not assessed | 330 |
| Dr. Tortorice | Not assessed | Not assessed | Not assessed | 396 |
| Dr. Sanchez | Not assessed | Not assessed | Not assessed | 438 |
| Dr. Johnson | Not assessed | Marked | Marked | 417 |
| Dr. Anderson | Mild | Moderate | Moderate | 475 |
| Dr. Sokkary | Not assessed | Not assessed | Not assessed | 486 |
| Dr. Hansell | Moderate | Moderate | Moderate | 347 |

In response, Defendant argues that the ALJ's findings are supported by substantial evidence because the ALJ weighed the opinions of all doctors who assessed Plaintiff's mental RFC, and he gave legally adequate reasoning for rejecting those that conflict with his findings.

In his decision, ALJ Parks determined that Plaintiff retained the following mental RFC:

> [S]he would be limited in her ability to perform detailed and complex tasks, but, as [the doctors who have assessed her] noted, not simple and repetitive tasks. Giving [Plaintiff] the benefit of doubt, the undersigned finds that there has been a 40-50% erosion in her ability to perform detailed and complex tasks. The undersigned finds no evidence to conclude that the claimant is unable to maintain persistence and pace and to withstand the pressures and stresses associated with an 8-hour workday, 40 hours workweek, or equivalent.

(AR 22.)

RFC is what a claimant can still do despite his or her limitations. 20 C.F.R. § 416.945(a). It is the responsibility of the ALJ, not the claimant's physician, to determine RFC. 20 C.F.R. § 416.946(c). However, "[i]n determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms . . . that are reasonably attributed to a medically determinable impairment.'" *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006) (quoting 1996 SSR LEXIS 5, *14 (SSR 1996)).

Here, contrary to Plaintiff's allegation, ALJ Parks considered all the relevant medical evidence relating to Plaintiff's concentration, persistence, and pace, and gave specific and legitimate reasons for according different weight to, or rejecting, an opinion. *See Robbins*, 466 F.3d at 883 (an

United States District Court
For the Northern District of California

1    ALJ must consider all relevant evidence in the record.).  The ALJ considered the opinions of all the

2    doctors that evaluated Plaintiff's mental health.  (AR 21-22.)  Four of these doctors—Drs. Gonick-

3    Hallows, Sanchez, Anderson, and El-Sokkary—concluded that Plaintiff had the ability to maintain

4    concentration, persistence, and pace to complete simple and repetitive tasks.  Dr. Gonick-Hallows

5    found that Plaintiff "was able to learn simple new tasks, and some kinds of tasks as they became

6    mildly to moderately complex" and only "appeared to become flustered and upset while working on

7    complex visual tasks."  (AR 333.)  Dr. Sanchez found that Plaintiff is "able to perform simple tasks,"

8    but that she "would have difficulties" with her concentration and pace in a "fast working

9    environment."  (AR 417.)  Dr. Anderson, as Plaintiff correctly asserts, found that she was

10   moderately impaired in her concentration, persistence, or pace.  (AR 476.)  However, he concluded

11   that she "could do simple repetitive work with occasional social contact."  (AR 483.)  Therefore,

12   contrary to Plaintiff's assertion,  Dr. Anderson's findings are not in conflict with the ALJ's

13   conclusion; rather, they support the ALJ's conclusion that Plaintiff has the ability to maintain

14   concentration, persistence, and pace to perform simple and repetitive tasks.  Likewise, Dr. El-

15   Sokkary found that Plaintiff "demonstrates a capacity to understand, remember, and perform simple

16   tasks" and "maintain a sufficient level of concentration, persistence, and pace to do basic work in an

17   environment" that her health condition would allow.  (AR 486.)

18        Although the ALJ did not discuss Dr. Hansell's Mental RFC Assessment in his decision, (AR

19   351-54), Dr. Hansell's assessment does not conflict with the ALJ's conclusion regarding Plaintiff's

20   mental RFC.  In assessing Plaintiff's sustained concentration and persistence, Dr. Hansell found that

21   she was not significantly limited in her ability to carry out very short and simple instructions, and

22   she was only moderately limited in her ability to carry out detailed instructions and maintain

23   attention and concentration for extended periods.  (AR 351-52.)  Again, contrary to Plaintiff's

24   assertion, Dr. Hansell's assessment is in concert with the opinions of all four doctors that the ALJ

25   relied on and is further evidence in support of the ALJ's finding that Plaintiff had the ability to

26   maintain concentration, persistence, and pace to complete simple and repetitive tasks.

27        The Court does note, however, that the ALJ's decision conflicts with Dr. Johnson's

28                                    Page 16 of  29

United States District Court
For the Northern District of California

assessment of Plaintiff's mental RFC.  Dr. Johnson found that Plaintiff would have "marked difficulty focusing and concentrating on sustained, productive, timely work tasks in the normal course of a full 8-hour workday or full 40-hour workweek."  (AR 475.)  Dr. Johnson is an examining physician.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (noting that examining physicians are those who examine but do not treat the claimant).  "If [an] . . . examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Further, "when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Id.* (citation omitted).

Here, the ALJ provided specific and legitimate reasons for rejecting the conflicting opinion of Dr. Johnson.  The ALJ rejected Dr. Johnson's opinion because it "[was] based upon his one time examination and [was] not consistent with the lack of ongoing psychotherapy and treatment, particularly the lack of any medication treatment during the following three years."  (AR 21.)  He gave "greater weight to Dr. Anderson's opinion [with regards to Plaintiff's concentration, persistence, and pace in the course of a full workday or workweek] since he had access to all the medical records."  (AR 21.)   First, the ALJ noted that Dr. Johnson had examined Plaintiff only once. Second, the ALJ noted that Plaintiff's lack of current treatment did not support Dr. Johnson's opinion.  And finally, the ALJ noted that, unlike Dr. Anderson, Dr. Johnson did not have the benefit of reviewing Plaintiff's treatment history before examining her.  These are legally adequate reasons for rejecting Dr. Johnson's opinion.  *See* 20 C.F.R. § 416.927(d)(2)(I) and (ii), (3) and (6) (discussing the factors that are considered when evaluating medical opinions).  Furthermore, unlike the opinions of Drs. Gonick-Hallows, Sanchez, and El-Sokkary, all of whom based their opinions on a clinical interview and multiple tests, Dr. Johnson based his opinion solely on a clinical interview.  *See* 20 C.F.R. § 416.927(d)(3).  Thus, the Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Johnson's opinion.

Although Plaintiff does not raise this issue, in its cross-motion, Defendant argues that Mr.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Chavez's opinion is not entitled to any significant weight because he is not an acceptable medical

2    source.  Defendant further argues that Plaintiff has waived any arguments as to the opinions of Mr.

3    Chavez and Drs. Rana and Tortorice because, although she mentions them in her brief, she has not

4    made any arguments with respect to them.

5         Mr. Chavez found that Plaintiff's ability to complete a normal workday and workweek

6    without interruptions from psychologically-based symptoms was poor.  (AR 398.)  The ALJ

7    concluded that, because Mr. Chavez is a L.C.S.W. and there are no supporting treatment records,

8    "his opinion is not entitled to the same weight as that of [Dr. Gonick-Hallows]."  (AR 21.)  The ALJ

9    provided specific and legitimate reasons for giving Mr. Chavez's opinion little weight.  The Code of

10   Federal Regulations distinguishes between opinions from "acceptable medical sources" and "other

11   sources."  20 C.F.R. §§ 416.913(a), (d), and (e).  Reports about a claimant's impairments must come

12   from "acceptable medical sources."  20 C.F.R. § 416.913(a).  Licensed social workers are "other

13   sources" of information, but are not considered an "acceptable medical source."  *See* 20 C.F.R. §

14   416.913(a).  "[O]pinions from 'other sources' are given less weight than opinions from 'acceptable

15   medical sources.'"  *Nottoli v. Astrue*, No. CIV S-09-0609 EFB, 2011 U.S. Dist. LEXIS 15850, *12

16   (E.D. Cal. 2011).  Therefore, the ALJ properly rejected Mr. Chavez's opinion.  Further, while

17   Plaintiff references the opinions of Mr. Chavez and Drs. Rana and Tortorice, she does not make any

18   arguments regarding them or make any objections as to the ALJ's decision regarding them.  Issues

19   not raised before the district court are waived.  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir.

20   2006).  Accordingly, the Court finds that Plaintiff has waived any arguments with respect to

21   opinions of Mr. Chavez and Drs. Rana and Tortorice.

22        For the reasons discussed above, the Court finds that there is substantial evidence supporting

23   the ALJ's decision that Plaintiff was mildly limited in her concentration, persistence, and pace.

24   Thus, the Court finds that ALJ Parks properly evaluated Plaintiff's mental RFC.

25   **B.       Whether the VE Was a Qualified Expert.**

26        Next, Plaintiff argues the ALJ failed to properly verify the VE's qualifications.  Specifically,

27   Plaintiff argues that, because there is no Notice of Hearing in the record, she had no means of

28                                          Page 18 of  29

1    verifying the VE's qualifications.

2         In response, Defendant argues that Plaintiff failed to raise an objection to the VE's

3    qualifications at the time of the hearing and raises no specific objections in her motion.

4         At the April 24, 2009 hearing, Plaintiff, who was unrepresented, did not make any object to

5    the qualifications of Robert Raschke, the VE, when the ALJ asked him if his qualifications set forth

6    in the notice of hearing were true and correct.  (121-27.)  Neither did she raise the issue in her appeal

7    to the Appeals Council.  She raises the issue for the first time in the present motion before the Court.

8         An ALJ's decision may be overturned because of reliance on inappropriate expert testimony.

9    *Mason v. Apfel*, No. C-99-01583 WHA, 2000 U.S. Dist. LEXIS 824, *10 (N.D. Cal. 2000) (citing

10   *Davis v. Mathews*, 450 F. Supp. 308, 316 (E.D. Cal. 1978)).  However, if a party fails to object to an

11   expert's qualifications at the hearing, he waives the right to challenge them.  *Ischay v. Barnhart*, 383

12   F. Supp. 2d 1199, 1222 (C.D. Cal. 2005) (citing *Mason*, 2000 U.S. Dist. LEXIS 824, *11).

13        In *Davis*, the plaintiff, who was denied disability benefits, had objected to the VE's

14   qualifications prior to the hearing, renewed his objection at the hearing and in his request for review

15   to the Appeals Council, and raised the issue on appeal to the district court.  450 F. Supp. at 311-12.

16   After requesting further briefing on the issue of a VE's qualifications, *id*. at 314, the court ultimately

17   remanded the case.  *Id.* at 316.  The court held that the ALJ's decision to use the VE despite the

18   plaintiff's objections amounted to an abuse of discretion because the plaintiff's objections afforded

19   the ALJ "full opportunity to select another [VE] from the list of available experts."  *Id.*  However,

20   the court noted that, had "[the] plaintiff failed to make a prior objection, the result in this case might

21   well be different."  *Id.*

22        Here, unlike the plaintiff in *Davis*, Plaintiff did not make any objections to the VE's

23   qualifications prior to the hearing, at the hearing, or in her request for review to the Appeals

24   Council.  She raises the issue for the first time in her motion before the Court.  As a result, the ALJ,

25   unlike the ALJ in *Davis*, was not afforded any opportunity to inquire into the VE's qualifications or

26   choose another VE.  Thus, the Court finds that, as a result of her failure to object prior to this

27   motion, Plaintiff has waived her right to challenge the VE's qualifications.

28

**United States District Court**
For the Northern District of California

1    Nevertheless, even if the Court were to disregard Plaintiff's failure to make an objection

2  earlier, her contention that the ALJ was required to engaged in an in-depth analysis of the VE's

3  qualifications is incorrect.  "A VE's recognized expertise provides the necessary foundation for his

4  or her testimony" and, therefore, "no additional foundation is required."  *Bayliss v. Barnhart*, 427

5  F.3d 1211, 1218 (9th Cir. 2005).  Mr. Raschke, as Defendant correctly points out in its cross-motion,

6  has been referenced as an expert in prior Social Security cases by the U.S. District Courts in the

7  Northern District of California.  *See Gipson v. Astrue*, No. C 06-5445 WDB, 2008 U.S. Dist. LEXIS

8  90312, *2, 20 (N.D. Cal. 2008).  This prior reference as an expert and the court's recognition of Mr.

9  Raschke's expertise lay the necessary foundation for his testimony as a VE.  Accordingly, the Court

10  finds that Mr. Raschke is a qualified VE.

11    For the reasons discussed above, the Court finds that Plaintiff waived her right to challenge

12  the VE's qualifications.  Thus, the Court finds that Mr. Raschke was a qualified VE..

13  **C.    Whether ALJ Parks Failed to Include All of Plaintiff's Limitations in the Hypothetical
        Questions Posed to the VE.**

14

15    Next, Plaintiff argues that the ALJ failed to include all of Plaintiff's limitations in the

16  hypothetical questions he posed to the VE.  Specifically, Plaintiff argues that the ALJ should have

17  included her anemia and fatigue resulting from it in the hypothetical questions.

18    In response, Defendant argues that the ALJ's hypothetical questions mirror the RFC finding,

19  and that there is no evidence in the record supporting Plaintiff's claim that she is limited by anemia.

20    The first medical evidence of Plaintiff's anemia is in her medical records from her

21  incarceration at the California Women's Correctional Center in 2004.  (AR 274-326.)  Plaintiff

22  requested medical assistance twice, "[claiming] she is anemic" and requesting iron supplement pills.

23  (AR 310, 320.)  The first medical evidence from Plaintiff's own physician, Dr. Tortorice, is from

24  October 14, 2004.  (AR 385.)  He treated Plaintiff for anemia and referred her to a dietitian.  (AR

25  385.)  On October 22, 2004, Plaintiff visited Ms. McCormick, a dietitian, and told her she is anemic

26  and had been prescribed iron pills, but had not "begun taking them."  (AR 386.)  Plaintiff also made

27  subjective reports that she was anemic during her psychological evaluation and psychiatric

28

**United States District Court**
For the Northern District of California

examinations with Drs. Gonick-Hallows, Sanchez, and Johnson on November 17, 2004, October 19, 2005, and May 18, 2006, respectively.  (AR 330, 414, 472.)  Dr. Tortorice did not treat Plaintiff for anemia again except for two visits on February 17, 2005 and April 19, 2005.  (AR 378, 459.)  On May 3, 2007, at Plaintiff's first hearing, Ms. Valle, her counsel at the time, inquired about Plaintiff's anemia and whether it causes her any physical problems that interfere with her work.  (AR 92.)  Plaintiff replied that she was unsure, but she felt fatigued at times.  (AR 92.)

"An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations."  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (citation omitted).  The hypothetical should be "accurate, detailed, and supported by the medical record."  *Id.*  (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)).  However, the ALJ need only include those limitations supported by substantial evidence.  *Robbins*, 466 F.3d at 886.  If the ALJ does not include all the claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included.  *Light v. SSA*, 119 F.3d 789, 793 (9th Cir. 1997).  The ALJ is not a "mere umpire" at the hearing, "but has an independent duty to fully develop the record, especially where the claimant is not represented."  *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992).

During the April 24, 2009 hearing, the ALJ posed two hypothetical question to the VE.  First, he posed the following hypothetical question:

> [Plaintiff is] under 50 and a mental RFC of mild for activities of daily living; would be moderately impaired for social functioning, meaning some difficulty with coworkers and the general public, not precluded on that basis; mild for concentration, persistence, and pace; would have difficulty with detailed and complex instructions, but could do simple, repetitive; no episodes of decompensation but would require limited public contact.  Any jobs in the regional or national economy that person could perform?

(AR 124-25.)  The VE answered in the affirmative.  (AR 125-26.)

Then the ALJ posed a second hypothetical question:

> [A]gain no exertional limitations, has to avoid hazardous machinery,

1   limited peripheral vision again, has a mental RFC of mild for activities
    of daily living; again moderately impaired for social functioning,
2   meaning some difficulty with coworkers and the general public;
    moderate for concentration, persistence, and pace; would have difficult
3   with detailed and complex instructions 40 to 50 percent as well as 40
    to 50 percent limitation on simple and repetitive tasks; no episode of
4   decompensation; limited public contact.  Any jobs in the regional or
    national economy that person could perform?

6   (AR 126.)  The VE answered in the negative.  (AR 126.)

7       Here, it was proper for ALJ Parks to not include anemia and fatigue as limitations in the

8   hypothetical questions, and conclude that the medical evidence does not support a finding of any

9   significantly limiting physical disorder other than blindness in Plaintiff's left eye.  First, Plaintiff's

10  claims are not supported by substantial evidence.  Although Plaintiff's medical records from the

11  California Women's Correctional Center note her subjective reports of being anemic, neither of the

12  two examinations provide any objective medical evidence nor conclude that she is anemic.  (AR

13  310, 320.)  At best, giving Plaintiff the benefit of doubt, these records can be read as suggesting

14  further examination to rule out anemia.  Likewise, although the medical records from Ms.

15  McCormick and Drs. Gonick-Hallows, Sanchez, and Johnson, (AR 330, 385, 414, 472), which span

16  over two-and-a-half-years, all note Plaintiff's subjective reports that she is anemic, none of these

17  records provide any objective medical evidence that Plaintiff suffers from anemia.  Plaintiff's

18  response to Ms. Valle's question at her first hearing, (AR 92), without any objective medical

19  evidence, is again, at best, a subjective report that she is anemic.

20      Plaintiff was treated and appears to have been prescribed medication for anemia by Dr.

21  Tortorice on three occasions.  (AR 378, 385, 459.)  However, the three examinations were over a

22  span of six months and are unsupported by Dr. Hamby's examination, a specialist to whom Dr.

23  Tortorice referred Plaintiff.  (AR 464.)  Dr. Hamby included anemia as a potential source of

24  Plaintiff's complaints of gas, but he could not make a final diagnosis and recommended that further

25  examinations and tests be completed.   (AR 464.)  However, the record does not contain any medical

26  evidence regarding further examinations or tests.

27      An ALJ may reject "a claimant's subjective complaints based solely on a lack of objective

28                      Page 22 of  29

United States District Court
For the Northern District of California

1    medical evidence to fully corroborate the alleged severity of pain" if the claimant fails to produce

2    "objective medical evidence of an underlying impairment."  *Rollins v. Massanari*, 261 F.3d 853, 856

3    (9th Cir. 2001) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)); *See* 20

4    CFR 416.929 ("[S]ymptoms, such . . . fatigue . . . will not be found to affect your ability to do basic

5    work activities unless medical signs or laboratory findings show that a medically determinable

6    impairment(s) is present.)  Accordingly, the Court finds that Plaintiff has failed to provide any

7    objective or conclusive medical evidence that she is anemic or that her anemia caused her fatigue.

8         For the reasons discussed above, the Court finds that Plaintiff did not provide any objective

9    medical evidence to support her subjective complaints of anemia and fatigue.  Thus, the Court finds

10   that ALJ Parks properly rejected Plaintiff's complaints of physical limitations other than blindness in

11   her left eye, and included all of her  limitations in the hypothetical questions posed to the VE.

12   **D.      Whether the VE's Testimony regarding Plaintiff's Ability to Perform the Job of Small
             Products Assembler Conflicted With the DOT.**

13

14        Next, Plaintiff argues the ALJ failed to question the VE about an apparent conflict between

15   his testimony and the DOT.  Specifically, Plaintiff argues that the ALJ was required to ask if there

16   was a conflict between the VE's testimony and the DOT, and that, here, there was an apparent

17   conflict because she does not have the reasoning level required, as stated in the DOT, to perform the

18   job of a small products assembler.

19        In response, Defendant argues that the reasoning level required to perform the job of a small

20   products assembler is consistent with the ALJ's RFC finding.

21        The VE answered the ALJ first hypothetical question , *supra* section V(c), in the affirmative

22   and testified:

23              You know, if we were to look at the general assembly field, there's a
                lot of just . . . bench assembly types of jobs where there is no
24              machinery involved at all.  Although you have contact with your
                coworkers, very little is necessary to actually perform the work, and
25              they would be simple entry-level jobs.  An example would be
                something like a small products assembler, 739.687-030, and that's a
26              two and a light job.

27   (AR 125.)

28                                     Page 23 of  29

**United States District Court**
For the Northern District of California

1    An ALJ may rely on a VE's testimony which contradicts the DOT, but only insofar as the

2 record contains persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F.3d 1428,

3 1435 (9th Cir. 1995) (decision pre-dates Social Security Ruling ("SSR") 00-4p).  SSR 00-4p

4 "explicitly requir[es] that the ALJ determine whether the [VE's] testimony deviates from the [DOT]

5 and whether there is a reasonable explanation for any deviations." *Massachi v. Astrue*, 486 F.3d

6 1149, 1153 (9th Cir. 2007).  Thus, the ALJ must first determine whether a conflict exists. *Id.*  "If it

7 does, the ALJ must then determine whether the [VE's] explanation for the conflict is reasonable and

8 whether a basis exists for relying on the [VE] rather than the [DOT]." *Id.*  The ALJ's failure to

9 explicitly inquire about a conflict is a "procedural error" that could be "harmless" "were there no

10 conflict, or if the [VE] provided sufficient support for her conclusion so as to justify any potential

11 conflicts." *Id.* at 1154, fn 19.

12    Here, as Plaintiff correctly contends, ALJ Parks failed to explicitly inquire whether a conflict

13 existed between the VE's testimony and the DOT.  The ALJ posed two hypothetical questions to the

14 VE, *supra* section V(C).  (AR 124-25, 126.)  The VE answered the ALJ's first hypothetical question

15 in the affirmative.  (AR 125.)  He identified multiple jobs in the region and in the national economy

16 that Plaintiff, based on her RFC and the limitations stated by the ALJ, could perform, including

17 small products assembler.  (AR 125-26.)  The ALJ's second hypothetical question was almost

18 identical to the first hypothetical, except it stated a greater limitation on Plaintiff's ability to maintain

19 concentration, persistence, and pace.  (AR 126.)  The VE answered the second hypothetical in the

20 negative.  (AR 126.)  This completed the VE's testimony.  (127-32.)  The ALJ did not ask the VE

21 about any potential conflicts between his affirmative answer and testimony to the first hypothetical

22 question and the DOT at any point during the VE's testimony.  (AR 126-27.)  Accordingly, the Court

23 finds that the ALJ failed to inquire about any potential conflict between the VE's testimony and

24 DOT.

25    However, contrary to Plaintiff's contention, there was no conflict between the VE's testimony

26 that Plaintiff could perform the job of a small products assembler and the DOT.  The DOT defines

27 small products assembler, DOT 739.687-030, as performing any combination of duties to assemble

28

1   parts of various materials to produce small products or loudspeakers.  Emp't and Training Admin.,

2   U.S. Dep't of Labor, Dictionary of Occupational Titles, Vol. II 772 (4th ed. 1991).  A reasoning level

3   of two is required to perform the job.  *Id.*  The DOT defines a reasoning level of two as "[applying]

4   commonsense understanding to carry out detailed but uninvolved written or oral instructions" and

5   "[dealing] with problems involving few concrete variables in or from standardized situations."  *Id.* at

6   1011.  Plaintiff's contention that, because she is limited to only simple and repetitive tasks, she

7   cannot perform the job of a small products assembler since it requires carrying out detailed but

8   uninvolved instructions, is unpersuasive.  Such "a neat, one-to-one parallel does not exist" between

9   the Social Security regulations' use of the terms "simple" and "detailed" with the DOT's use of those

10  terms in the reasoning levels.  *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005).  A

11  reasoning level of one applies "to the most elementary of occupations" and requires "only the

12  slightest bit of rote reasoning."  *Id.*  As such, the job of a small products assembler is well within

13  Plaintiff's ability to perform "simple and repetitive tasks" because "[s]omeone able to perform

14  simple, repetitive instructions indicates a level of reasoning sophistication above" a reasoning level

15  of one.  *Id*.  Thus, the Court finds that there was no conflict between the VE's testimony and the

16  DOT.

17          For the reasons discussed above, the Court finds that the ALJ failed to explicitly inquire

18  whether there was a conflict between the VE's testimony and the DOT.  However, the VE's

19  testimony was consistent with the DOT and thus, the Court finds that any procedural error was

20  harmless.

21  **E.      Whether ALJ Parks Properly Accepted the VE's Testimony Regarding the Number of
            Regional Cleaner and Polisher Jobs.**

22

23          Finally, Plaintiff argues that the ALJ failed to properly verify that the VE's testimony

24  regarding the number of cleaner and polisher jobs was accurate.  Specifically, Plaintiff argues that

25  the ALJ should have verified the source of the information and whether or not it was full-time or

26  part-time.

27          In response, Defendant argues that Plaintiff's doubts do not constitute evidence and that the

28                                              Page 25 of  29

1    ALJ did not include a part-time restriction or any non-mental exertional limitation in the

2    hypothetical questions posed to the VE.  Therefore, there is no reason the VE's testimony would

3    include part-time work in his answer.

4          The VE answered the ALJ first hypothetical question, *supra* section V(c), in the affirmative

5    and testified:

6          Other jobs, you know, that job of cleaner and polisher which is in that
           category of laborer but not construction.  The DOT is 709.687-010,
7          two and a light.  At the light level, we're going to find 77, 7,800 if
           these entry level light jobs in our region and about 700,000 nationally,
8          and I would give you that same erosion [generously eliminate half of
           that number because of the issue with hazardous machinery].  And
9          there are a lot of other jobs like this.  I mean, you know, certainly
           you've got parking lot attendant might be something that would come
10         up here, a packing line worker.  All these are light, entry-level jobs
           that I'm mentioning.

11

12   (AR 125.)

13         Work exists in the national economy when there is a significant number of jobs, in one or

14   more occupations, having requirements which the claimant is able to meet with his or her physical or

15   mental abilities and vocational qualifications.  20 C.F.R. § 416.966(b).  There must be significant

16   numbers either in the region where the claimant lives or in several other regions of the country.  20

17   C.F.R. § 416.966(a).  It does not matter whether work exists in the immediate area in which a

18   claimant lives, but isolated jobs that exist only in very limited numbers in relatively few locations

19   outside of the region where the claimant lives are not considered work which exists in the national

20   economy.  20 C.F.R. § 416.966(a) and (b).  The ALJ takes administrative notice of reliable job

21   information available from various governmental and other publications such as the DOT.  20 C.F.R.

22   § 416.966(c).

23         Here, contrary to Plaintiff's contention, ALJ Parks properly verified that the VE's testimony

24   regarding the cleaner and polisher jobs was accurate.  First, the VE acknowledged during the hearing

25   that he was relying on the most recent DOT.  The VE, while discussing Plaintiff's ability to perform

26   her past relevant work, testified that her skills as a data entry clerk from her past work were not

27   transferable to modern data entry clerk positions because the DOT failed to incorporate the

28

                                        Page 26 of  29

technological advances in the data entry clerk position.  (AR 124.)  During this testimony, the VE

clarified that the source of his information was the DOT, stating, "I mean, it's, it's my current, 1991"

version.  (AR 124.)  It is well established that the DOT is a reliable source of job information.  *See*

20 C.F.R. § 416.966(c).  Thus, the Court finds that the VE's testimony was from a reliable source.

Second, based on the data in the DOT, the VE identified work that Plaintiff could perform.

The VE testified that Plaintiff had the ability to work as a small products assembler, cleaner and

polisher, parking lot attendant, packing line worker, and "a lot of other jobs like this."  (AR 125.)

He testified that "the whole category of generally assembly," which, including small products

assembler, included about 7,300 to 7,500 jobs "within our region and about three-quarters of a

million within the area."  (AR 125.)  He also testified there were about 7,700 or 7,800 entry level

jobs similar to cleaner and polisher in the region and "700,000 nationally."  (AR 125.)  The VE

stated that he would "generous[ly]" eliminate half of these numbers because Plaintiff's need to avoid

hazardous machinery.  (AR 125.)  Eliminating half of the available small products assembler and

cleaner and polisher jobs would result in at least 3,150 small products assembler jobs and 3,500

cleaner and polisher jobs within the region.  Although the Ninth Circuit "has never clearly

established the minimum number of jobs necessary to constitute a 'significant number,'" *Baker v.

Sect'y of Health and Human Servs.*, 882 F.2d 1474, 1478 (9th Cir. 1989), these numbers are much

greater than what the Ninth Circuit has found to be significant numbers of work in previous cases.

*See Baker*, 882 F.2d at 1479 (holding that "1,266 jobs are within the parameters of 'significant

numbers'"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that between

1,000 and 1,500 jobs in the local area was a significant number).

However, Plaintiff urges the Court to exclude the 3,500 cleaner and polisher jobs because the

VE did not indicate whether the number of jobs were part-time or full-time.  However, she fails to

cite any regulations or case law requiring the VE to distinguish between part-time and full-time jobs.

The regulations only require that a significant number of jobs exist either in the region where the

claimant lives or in several other regions of the country.  20 C.F.R. § 416.966.  Plaintiff cites to SSR

96-8p as sole support her contention that the ALJ should have asked the VE whether or not the job

**United States District Court**
For the Northern District of California

1    was part-time or full-time.  SSR 96-8p clarifies that "RFC is an assessment of an individual's ability

2    to do sustained work-related physical and mental activities in a work setting on a regular and

3    continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule,"

4    However, even giving Plaintiff the benefit of doubt and accepting SSR 96-8p as supporting her

5    proposition (which the Court does not do here), Plaintiff fails to provide any evidence that the VE's

6    testimony regarding the number of cleaner and polisher jobs included part-time jobs.  Plaintiff's only

7    evidence, as Defendant correctly points-out in its cross-motion, is her own doubts about the VE's

8    testimony.

9         Further, even if the Court were to disregard the lack of legal authority or evidence and

10   exclude the 3,500 cleaner and polisher jobs, the VE still indicated that there are at least 3,150 small

11   products assembler jobs, parking lot attendant jobs, packing line worker, and similar jobs that

12   Plaintiff could perform.  (AR 125.)  Since the ALJ posed complete hypotheticals to the VE listing all

13   of Plaintiff's limitations and the VE's testimony did not conflict with the DOT, *supra* sections V(c)

14   and (D), the VE properly identified small products assembler, parking lot attendant, and packing line

15   worker as jobs which Plaintiff could perform.  (AR 125.)  Also, the 3,150 regional small products

16   assembler jobs alone are much greater than what the Ninth Circuit has found to be a significant

17   number of work in previous cases.  *See Baker*, 882 F.2d at 1479 (holding that "1,266 jobs are within

18   the parameters of 'significant numbers'"); *see also Meanel*, 172 F.3d at 1115 (holding that between

19   1,000 and 1,500 jobs in the local area was a significant number).  Therefore,  "if any error occurred,

20   such error was harmless error because there existed other jobs in the national economy that Plaintiff

21   could perform."  *Smoll v. Astrue*, NO. EDCV 08-00846 §, 2009 U.S. Dist. LEXIS 52283, *17-18

22   (C.D. Cal. 2009).  Accordingly, the Court finds that, at most, the ALJ's failure to inquire about

23   whether the cleaner and polisher jobs included part-time or full-time jobs was harmless error.

24        For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's

25   conclusion that there is work in significant numbers that Plaintiff could perform.  Thus, the Court

26   finds that ALJ Parks properly accepted the VE's testimony regarding the number of cleaner and

27   polisher jobs.

28

## V.  CONCLUSION

Based on the foregoing analysis, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: May 10, 2011

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
For the Northern District of California